IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02924-BNB

MAURICE E. LINDSEY,

    Plaintiff,

v.

S. TRUE, Duty as Correction Officer,
POTES, Duty DHO Secretary,
MITTADGE, Duty DHO Discipline Hearing Officer,
ANTHONY, Duty Special Housing Unit Lieutenant,
DIXSON, Duty Special Housing Unite Leiutenant,
A. BIALEK, Duty Correction Officers, and
CARTER, Duty Doctor Psychologist,

    Defendants.

ORDER TO DISMISS IN PART AND TO DRAW CASE
TO A DISTRICT JUDGE AND A MAGISTRATE JUDGE

    Plaintiff, Maurice E. Lindsey, is a prisoner in the custody of the United States Bureau of Prisons (BOP) who currently is incarcerated at the United States Penitentiary in Florence, Colorado. Mr. Lindsey filed *pro se* a second amended prisoner complaint (ECF No. 28) pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 288 (1971), and 28 U.S.C. § 1331. He asks for habeas corpus relief, money damages, and injunctive relief. He was granted leave to proceed pursuant to 28 U.S.C. § 1915 without payment of an initial partial filing fee.

    Subsection (e)(2)(B) of § 1915 requires a court to dismiss *sua sponte* an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief. A legally frivolous claim is one in which the

plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

The Court must construe Mr. Lindsey's filings liberally because he is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not act as a *pro se* litigant's advocate. *See Hall*, 935 F.2d at 1110. For the reasons stated below, the second amended complaint and the action will be drawn in part and dismissed in part pursuant to § 1915(e)(2)(B) as legally frivolous.

Mr. Lindsey asserts three claims. In his first claim, he contends that on October 24, 2011, Correctional Officer S. True fabricated an incident report accusing him of "Engaging in a Sexual Act"; on October 25-26, 2011, Denver Hearing Officer (DHO) Potes violated a BOP program statement by failing to schedule him for the next available discipline hearing; and on January 6, 2012, DHO Mittadge violated a BOP program statement by conducting an out-of-time hearing on the incident report, found Mr. Lindsey guilty as charged, and sanctioned him with twenty-days of lost good-conduct-time credits, thirty days in the Special Housing Unit (SHU), sixty days' loss of canteen, and sixty days' loss of telephone. Mr. Lindsey also complains that DHO Mittadge and DHO Potes failed to provide him with a copy of the DHO hearing decision report. Mr. Lindsey asserts a due process claim based on these allegations.

Mr. Lindsey's first claim fails to the extent it is based on an allegedfailure to comply with BOP program statements. "[A] failure to adhere to administrative regulations does not equate to a constitutional violation." *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194

2

(1984)). A review of a disciplinary proceeding is "limited to whether the three steps mandated by *Wolff [v. McDonnell*, 418 U.S. 539, 556 (1974),]* were followed and whether there was some evidence to support the disciplinary committee's findings." *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996); *see also Diaz v. McGuire*, 154 F. App'x 81, 84-85 (10th Cir. 2005) (stating that prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause), *cert. denied*, 546 U.S. 1221 (2006). *Wolff* only requires that Mr. Lindsey be provided with a notice of the charges against him within twenty-four hours prior to the disciplinary hearing, an opportunity to call witnesses and present documentary evidence in his defense if doing so would not be unduly hazardous to institutional safety or correctional goals, and a written statement by the facfinders of the reasons for the decision and the evidence on which they relied. *Id.* at 563-66. Mr. Lindsey does not allege that these *Wolff* requirements were not met.

Mr. Lindsey must file a habeas corpus application after exhaustion of administrative remedies insofar as he seeks to expunge the disciplinary conviction from his prison record and restore his lost good-conduct-time credits. *See Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973) (habeas corpus proper remedy for prisoner seeking relief resulting in reinstatement of good-time credits); *Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987) (per curiam) (same). An inmate may not pursue a *Bivens* damages claim alleging due process violations occurring during a prison disciplinary proceeding if granting relief would imply the invalidity of the resulting disciplinary conviction, unless that conviction has been invalidated. *See Edwards v. Balisok*, 520

U.S. 641, 643, 648 (1997).  Therefore, Mr. Lindsey's first claim asserted against Defendants S. True, Potes, and Mittage is meritless, and will be dismissed.

Mr. Lindsey's second claim is comprised of four subclaims alleging equal protection or due process violations.  Subclaims one, two, and three are asserted against Lieutenant Anthony.  In his first subclaim, Mr. Lindsey complains that Lieutenant Anthony violated his equal protection rights by forcing him to be double celled with a violent inmate from October 24, 2011, to January 20, 2012.  He also alleges a violation of his equal protection rights because he currently is double celled with another violent inmate.  He does not allege that he was injured by either inmate.  In his second subclaim, Mr. Lindsay complains that despite numerous requests to Lieutenant Anthony, his personal property still has not been returned in violation of his due process rights.  In his third subclaim, Mr. Lindsay asserts that despite numerous requests to Lieutenant Anthony, he was denied placement in protective custody in violation of his due process rights.  As his fourth and final subclaim, Mr. Lindsey alleges that Lieutenant Dixon and Officer Bialek violated his due process rights by ordering him from protective custody into the general population and issuing him an incident report for refusing to comply. He further contends that the incident report has been dismissed and expunged from his prison record.

Mr. Lindsey fails to allege facts to support an equal protection claim based on double celling.  He fails to allege that he is similarly situated to other inmates or that he has not been treated the same as similarly situated inmates.  He does not specifically identify any similarly situated individuals; rather, he generally complains that he is being treated differently because of double celling.  Therefore, it is not clear that Mr. Lindsey

4

has been treated differently than any similarly situated individual.  *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996).

Even liberally construing Mr. Lindsey's double-celling allegations to assert a claim of cruel and unusual punishment, the first subclaim fails.  Prison officials must "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).  Double celling does not constitute a per se violation of a prisoner's right to humane conditions of confinement, *Rhodes v. Chapman*, 452 U.S. 337 (1981), and Mr. Lindsey fails to allege an injury based upon double celling.  The United States Constitution requires that a party seeking to invoke the jurisdiction of the federal courts must demonstrate that he has suffered some actual or threatened injury, that the injury was caused by the defendants, and that a favorable judicial decision is likely to redress the injury.  *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *Hackford v. Babbitt*, 14 F.3d 1457, 1464 (10th Cir. 1994).  Because Mr. Lindsey fails to demonstrate any actual or threatened injury as a result of his double celling, he lacks standing to assert claims concerning those conditions.  *See Citizens Concerned for Separation of Church & State v. City & County of Denver*, 628 F.2d 1289, 1295-96 (10th Cir. 1980).

Mr. Lindsey's second subclaim concerning the loss of his personal property in violation of his due-process rights also is without merit.  The United States Constitution guarantees due process when a person is deprived of life, liberty, or property.  *See*

*Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). "[T]he Due Process Clause simply is not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original); *see also Wilson v. United States*, 29 F. App'x, 495, 496 (10th Cir. 2002) (same). Even construing Mr. Lindsey's complaint as asserting that Mr. Anthony intentionally deprived him of his property, he cannot state a constitutional violation. S*ee Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (finding that an unauthorized intentional deprivation of property does not violate due process if an adequate postdeprivation remedy for the loss is available); *see also Wilson*, 29 F. App'x at 496-97 (same). A prison grievance procedure is an adequate postdeprivation remedy if the grievance procedure provides a meaningful remedy. *See Hudson*, 468 at 536 n.15; *Wilson*, 29 F. App'x at 497. Mr. Lindsey does not allege that the prison grievance procedure was unavailable to him because he alleges that he exhausted the procedure. The fact that his administrative grievances were not successful, by itself, does not mean that the grievance procedure was not an adequate remedy.

Mr. Lindsey's third and fourth subclaims concerning his placement also are without merit. As previously stated, the United States Constitution guarantees due process when a person is deprived of life, liberty, or property. *See Templeman*, 16 F.3d at 369. Mr. Lindsey does not allege that he was deprived of life or property by his placement in the general population instead of protective custody. The existence of a constitutionally protected liberty interest depends upon the nature of the interest asserted. *See Sandin v. Conner*, 515 U.S. 472, 480 (1995). Generally, a liberty interest may arise from the Constitution itself or under prison regulations. *Id.* at 483-84.

Prison regulations may create a liberty interest if they impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See id.* at 480.

Mr. Lindsey's placement in the general population instead of in protective custody does not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life, nor does it implicate a liberty interest that arises directly under the Constitution because prisoners are not entitled to any particular degree of liberty. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Templeman*, 16 F.3d at 369. The Constitution itself does not provide a prison inmate with any liberty interest in his classification or placement. *Meachum*, 427 U.S. at 225; *Templeman*, 16 F.3d at 369. In short, the Due Process Clause does not protect every change in the conditions of confinement that has a substantial adverse impact on the prisoner. *See Meachum*, 427 U.S. at 224. Since Mr. Lindsey alleges that the incident report has been dismissed and expunged from his prison record, he fails to allege any injury resulting from the report. Subclaims one, two, and three of claim two asserted against Lieutenant Anthony and subclaim four of claim two asserted against Lieutenant Dixon and Officer Bialek are meritless, and will be dismissed.

As his third and final claim, Mr. Lindsey contends he was on drugs used to treat depression, and Dr. Carter denied him mental health treatment, causing him increased depression, thoughts of suicide, among other psychological effects. This claim will be drawn to a district judge and magistrate judge.

Accordingly, it is

ORDERED that the second amended complaint (ECF No. 28) is drawn in part and dismissed in part. It is

FURTHER ORDERED that claim three and the case are drawn to a district judge and magistrate judge. It is

FURTHER ORDERED that claims one and two are dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). It is

FURTHER ORDERED that Defendants S. True, Potes, Mittadge, Anthony, Dixson, and A. Bialek are dismissed as parties to this action. The only remaining Defendant is Carter.

DATED at Denver, Colorado, this  7th  day of    May        , 2012.

BY THE COURT:


   s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court